**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **WILLIE FEARS, JR.,** | |
| **Petitioner,** | |
| v. | **Civil Action No.  06-0086 (JDB)** |
| **UNITED STATES OF AMERICA,** | |
| **Respondent.** | |

**MEMORANDUM OPINION**

On January 16, 2003, petitioner pleaded guilty to one count of possession with intent to distribute cocaine base.  See Plea Agrmt.; Pet'r Crim. Judgmt. at 1.   Petitioner waived trial-by-jury and his self-incrimination and other rights, and the government agreed to drop the remaining count in the indictment for unlawful possession with intent to distribute heroin.  See Plea Agrmt. at ¶ 6.  Petitioner's plea agreement contained an acknowledgment that he was a "career offender" within the meaning of the Federal Sentencing Guidelines ("FSG").  See Plea Agrmt. at ¶ 10.  At the sentencing hearing held on May 27, 2003, the Court determined petitioner's sentence based on Criminal History Category VI, rather than Criminal History Category V, due to his status as a career offender.  See Pet. Counsel's Mem. in Aid of Sentencing ("Mem. in Aid") at 1.  Moreover, the total resulting offense level given his career criminal status was 29 -- including a three-point reduction for acceptance of responsibility -- rather than 18.  See id.  Consistent with the request of petitioner's counsel, Ms. Erica Hashimoto, Assistant Federal Public Defender, the Court sentenced petitioner to the minimum sentence recommended by the FSG for his total offense level and

criminal history category -- 151 months of incarceration, plus three years of supervised release and payment of a one-hundred dollar special assessment.  <u>See</u> Pet'r Crim. Judgmt. at 6 (Court's Statement of Reasons); Mem. in Aid at 1-2.  The Court thoroughly explained the career offender provision and the method of calculating petitioner's sentence.  Petitioner did not object to his sentence or to the career offender designation.  Although the plea agreement does not waive his appeal rights, the Court had informed petitioner at the plea hearing that by entering a guilty plea, he would be surrendering his right to appeal his conviction in most settings; that advice was repeated at the sentencing hearing.  The criminal judgment was entered on May 28, 2003.  <u>See</u> Pet'r Crim. Judgmt. at 1.

Two and one-half years later, on December 14, 2005, petitioner filed a motion entitled "Application for Certificate of Appealability," which, notwithstanding its title, expressly sought relief pursuant to 28 U.S.C. § 2255.  <u>See</u> Pet'r § 2255 Mot. at 1.  Because petitioner had not yet filed a § 2255 motion, the Court entered an Order informing petitioner that the motion would be docketed as a motion pursuant to § 2255.  <u>See</u> <u>United States v. Fears</u>, No. 02-cr-379-02 (D.D.C. Jan. 13, 2006) (dkt. no. 64) (order).  In his motion, petitioner asserts that when he pleaded guilty, he was unaware of the possibility that he could be labeled a "career offender."  Petitioner claims that he would have chosen to proceed to trial had he been informed that his guideline sentencing range could be increased from the 51-63 month range (at the offense level of 18 and Criminal History Category V) to the 151-188 month range (at the offense level of 29 and Criminal History Category VI).  Petitioner submits that the "draconian effect" of the career offender determination proves that it was not merely a "sentencing factor," but rather functioned as "an element of the offense" that should have been found by the jury under <u>Apprendi v. New Jersey</u>, 530 U.S. 466

(2000).  <u>See</u> Pet'r § 2255 Mot. at 3, 4.  He argues that the Court violated Fed. R. Crim. Proc. 11 by failing to inform him of the increase in severity of sentencing at the time of his guilty plea, and that the government tricked him by using ambiguous language in the plea agreement and promising not to seek sentencing enhancements or base level offense increases.

On January 30, 2006, petitioner submitted a second filing entitled "Motion to Amend Initially Filed 28 U.S.C. § 2255 Motion."  <u>See</u> Pet'r Mot. Amend. at 1.  That filing seeks to "support and clarify" petitioner's claim that the Court erred by failing to inform him at his plea hearing of the possibility that he would be labeled a career offender.   <u>See</u> Pet. Mot. Amend at 1. Petitioner also claims that the performance of Ms. Hashimoto, his attorney throughout the pre-trial, plea and sentencing phases, constituted ineffective assistance of counsel.  <u>See</u> <u>id</u>. at 3. According to petitioner, Ms. Hashimoto violated various provisions of the American Bar Association's Defense Function Standards by "failing to properly prepare, investigate, and discuss a defense," <u>id</u>., and "intentionally duped," "manipulat[ed]," and "coercively . . .  took advantage of defendant's lack of intelligence" in order quickly to resolve the case by convincing him to accept the government's plea agreement, <u>see</u>, <u>e.g.</u>, <u>id</u> at 4.  Moreover, petitioner contends that Ms. Hashimoto led him to believe that he would not be sentenced as a career offender.  According to petitioner, the alleged errors of the Court and Ms. Hashimoto have the combined effect of rendering his guilty plea "nothing more than a forced involuntary result."  <u>Id</u>.

For the reasons that follow, the Court concludes that petitioner's motion does not merit a hearing and should be denied.  A court may deny a § 2255 motion without holding an evidentiary hearing when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255; <u>United States v. Carr</u>, 2006 WL 401818 at *2 (D.D.C.

Feb. 21, 2006).  The decision whether to hold a hearing is committed to the district court's

discretion, particularly when, as here, the judge who is considering the § 2255 motion also

presided over the proceeding in which the petitioner claims to have been prejudiced.  See Carr,

2006 WL 401818 at *2 (citing United States v. Morrison, 98 F.3d 619, 625 (D.C. Cir. 1996);

United States v. Pollard, 959 F.2d 1011, 1030 (D.C. Cir. 1992)).  The § 2255 motion must raise

"'detailed and specific factual allegations whose resolution requires information outside of the

record or the judge's personal knowledge or recollection'" in order to warrant a hearing.  See id.

(citing Pollard, 959 F.2d at 1030-31).  Upon a careful review of the petitioner's motion and the

entire record of this criminal proceeding, as well as its own recollection of the relevant events, the

Court concludes that a hearing is unnecessary.

## ANALYSIS

*I.  Petitioner's § 2255 Motion Is Time-Barred*

The Antiterrorism and Effective Death Penalty Act ("AEDPA") requires that a petitioner

file a § 2255 motion within one year from the later of

**(1)** the date on which the judgment of conviction becomes final;

**(2)** the date on which the impediment to making a motion created by governmental action
in violation of the Constitution or laws of the United States is removed, if the movant was
prevented from making a motion by such governmental action;

**(3)** the date on which the right asserted was initially recognized by the Supreme Court, if
that right has been newly recognized by the Supreme Court and made retroactively
applicable to cases on collateral review; or

**(4)** the date on which the facts supporting the claim or claims presented could have been
discovered through the exercise of due diligence.

28 U.S.C. § 2255.

In most cases, § 2255(1) will provide the operative date for calculating the expiration of

-4-

the filing period.   In this case, petitioner's motion arguably can be liberally construed to rely on recent developments in the law of sentencing; hence, a threshold question is whether the operative date is supplied by § 2255(1) or § 2255(3).[1]  By the plain language of the statute, the later of these dates must be used to calculate the expiration of the filing deadline.

Under § 2255(1), petitioner was required to file his motion by not later than June 11, 2004. In the case of a petitioner who has not sought relief on direct appeal, the judgment becomes final under § 2255(1) when the window of time to file an appeal has expired, see, e.g., United States v. Jackson, 2005 WL 3274510 at *2 (D.D.C. Aug. 23, 2005) (unpublished disposition); Smith v. United States, 2005 WL 1313445 at *3 (D.D.C. Jun. 1, 2005) (unpublished disposition) --

---

[1]Section 2255(2) does not apply because petitioner does not argue, and the record does not reveal, that the government has created any impediment to petitioner's motion that prevented him from filing the motion within the one-year period.  Moreover, § 2255(4) is also inapplicable, because petitioner identifies no new facts that were previously unknown to him and have come to light since the date on which the Court's judgment became final.  Petitioner's motion rests on two assertions -- that the Court did not inform him at his plea hearing of the possibility that he could be labeled a career offender, and that his decision to plead guilty was the result of Ms. Hashimoto's alleged ineffective assistance.  Thus, petitioner's basis for relief under § 2255 rests on facts that were known to petitioner on the date of his sentencing.  As of that date, petitioner knew that he had been labeled a career offender, he was aware of the sentence that he received, and he was personally aware of Ms. Hashimoto's performance and strategic decisions.  Hence, all facts necessary to support a timely motion based upon alleged court error and ineffective assistance of counsel were at petitioner's disposal on the date of his sentencing.

A liberal construction of petitioner's motion might support an argument that petitioner was unaware that Ms. Hashimoto may have performed deficiently until he became familiar with the standards for proficient legal representation by "enlist[ing] the sympathetic ear of a knowledgable [sic] 'jail house attorney' (inmate)."  See Pet'r Mot. Amend. at 4, 5.  But this would mean that his arguments are not based upon new facts, but rather new knowledge of the legal significance of facts already known to him.  Section 2255(4) does not apply under such circumstances.  See Smith v. United States, 2005 WL 1313445 at *4 (D.D.C. Jun. 1, 2005) (unpublished disposition) (citing United States v. Pollard, 161 F. Supp. 2d 1, 10 (D.D.C. 2001)).  Furthermore, § 2255(4) assigns the operative date according to the exercise of due diligence by a reasonable person.  The Court is confident that it is reasonable to expect petitioner to have been able to learn of the applicable standards for attorney performance through the exercise of due diligence much earlier than a year and a half after the date on which he could no longer appeal his sentence.

ordinarily ten days from the date on which the judgment was entered, <u>see</u> Fed. R. App. P. 4(b)(1)(A)(i); <u>Jackson</u>, 2005 WL 3274510 at *2.  In this case, then, the operative date is June 11, 2003 -- ten business days following the date on which the criminal judgment was entered.  Hence, petitioner was required to file any motion seeking relief pursuant to § 2255 by not later than June 11, 2004.  He did not do so until December 14, 2005.

Under § 2255(3), petitioner has also exceeded the statute of limitations.  Construing petitioner's motion liberally (as the Court must), it appears that he bases his motion at least in part upon the Supreme Court's decision in <u>United States v. Booker</u>, 543 U.S. 220 (2005).  <u>See</u> Pet. Mot. at 6 - 7, 12.  In this vein, petitioner's argument would have to be that the operative date under § 2255(3) is January 12, 2005 -- the date on which <u>Booker</u> was decided -- which would mean that his motion was filed before the one-year period expired.  But the analysis is not that simple.

<u>Booker</u> post-dates petitioner's sentencing, which means that in order for petitioner to take advantage of that decision, it would have to apply retroactively.  Retroactive applications of law are disfavored, and, by the plain terms of § 2255 as relevant here, are only permitted with respect to rules that have been "newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  28 U.S.C. § 2255; <u>see generally</u> <u>Teague v. Lane</u>, 489 U.S. 288, 310, 313 (1989).  <u>Booker</u> does not satisfy this high standard.  <u>See</u> <u>In re Zambrano</u>, 433 F.3d 886, 889 (D.C. Cir. 2006) (stating that "<u>Booker</u> is not a new rule of constitutional law 'made retroactive to cases on collateral review by the Supreme Court' within the meaning of 28 U.S.C. § 2255"); <u>Carr</u>, 2006 WL 401818 at * 4 (citing <u>Zambrano</u>, 433 F.3d at 889); <u>see also</u> <u>United States v. Mathis</u>, 2005 WL 692082 at *14 (D.D.C. Mar. 24, 2005) (unpublished disposition) (concluding that <u>Booker</u> did not announce a "watershed rule of criminal procedure" and thus is not retroactive

under Teague).  Hence, Booker does not apply to petitioner's case, and the operative date is

supplied by § 2255(1), not § 2255(3).  Petitioner was, accordingly, required to file his motion by

not later than June 11, 2004, a date he exceeded by almost eighteen months.

*II.  Petitioner Is Not Entitled to Equitable Tolling of the AEDPA Filing Deadline*

The D.C. Circuit has not decided whether a court may, in extraordinary circumstances,

apply equitable doctrines to toll the statute of limitations imposed by the AEDPA.  See, e.g.,

United States v. Pollard, 416 F.3d 48, 56 n.1 (D.C. Cir. 2005); United States v. Cicero, 214 F.3d

199, 203 (D.C. Cir. 2000) (finding that even if equitable tolling is a legal possibility in the

AEDPA context, petitioner could not benefit from its application because he failed to show

extraordinary circumstances); cf. United States v. Baylor, 2005 WL 3699355 at * 1 (D.C. Cir.

May 6, 2005) (unpublished disposition) (stating that "[a]lthough the government concedes § 2255

is subject to equitable tolling, it argues, and we agree, that petitioner's delay is not excusable under

that doctrine").   Assuming -- without deciding -- that tolling is permissible, it would be

inappropriate under the circumstances of this case.  This is not a case in which petitioner made a

good-faith effort to comply with the statutory deadline but was prevented from filing his motion

on time due to circumstances beyond his control, see Calderon v. United States Dist. Ct., 128 F.3d

1283, 1288 (9th Cir. 1997); see also Pollard, 416 F.3d at 56 (noting that petitioner did not deserve

the benefit of equitable tolling because he failed to identify "unethical and outrageous behavior"

that prevented him from timely filing his § 2255 motion), nor is this a case in which petitioner

exceeded the deadline by a short period of time possibly due to the sluggishness of the prison's

mail service, see Carr, 2006 WL 401818 at *1 n.2.

Rather, petitioner missed the deadline by a year and a half, and his failure to acknowledge

or explain this egregious delay suggests that he was (and remains) simply unaware of or unconcerned with the statutory requirement.  Neither petitioner's self-acknowledged "limited intelligence" nor his ignorance of the law, however, are sufficient to justify the extraordinary action of departing from the will of Congress as clearly expressed in § 2255.  <u>See</u> <u>Jackson</u>, 2005 WL 3274510 at *2 (stating that "[a] defendant who is without legal representation, or sits on his rights, or is ignorant of the law, does not present extraordinary circumstances" and declining to equitably toll the statutory deadline because petitioner failed to explain the delay in filing his § 2255 motion) (citing <u>Cicero</u>, 214 F.3d at 203); <u>see</u> <u>also</u> <u>Baylor</u>, 2005 WL 36993355 at *1 (finding that petitioner was not entitled to equitable tolling of § 2255 filing deadline despite court error that prevented petitioner and his new counsel from receiving a copy of the court's amended judgment because counsel did not diligently check on the status of the case).  Indeed, the D.C. Circuit has declined to apply equitable tolling under much more compelling circumstances.  <u>See</u> <u>Cicero</u>, 214 F.3d at 201, 203-04 (declining equitable tolling despite the fact that petitioner was prevented from completing his legal research when stabbed by a fellow inmate, hospitalized, placed in protective segregation with little or no access to law library resources, and separated from his legal papers).  "Greater diligence is required of one who seeks the benefit of equitable tolling."  <u>Baylor</u>, 2005 WL 36993355 at *1.

*III.  Even Were the Court Inclined to Equitably Toll the Statutory Deadline, Petitioner's Motion Nonetheless Lacks Merit*

### A.  The Court Is Bound to Remain Faithful to the Rule of <u>Almendarez-Torres</u>

In any event, petitioner would not prevail on the merits of his § 2255 claim.   To begin with, the Supreme Court has held that prior convictions may, consistent with the Constitution, be used to increase the sentence for the relevant offense.   <u>Almendarez-Torres v. United States</u>, 523

U.S. 224 (1998). Not to be deterred, petitioner argues that <u>Almendarez-Torres</u> was implicitly

overruled by <u>Apprendi</u>, and even if it were not, it is likely to be overruled in the future.

Petitioner's ultimate conclusion appears to be that this Court is free to disregard <u>Almendarez-</u>

<u>Torres</u> because, to the extent that it remains viable, it is confined solely to its particular facts. <u>See</u>

Pet. Mot. at 3, 5, 8-9. But petitioner's argument lacks legal support. Petitioner has identified no

definitive legal authority -- and the Court is certainly not aware of any -- from either the Supreme

Court or the D.C. Circuit holding that <u>Almendarez-Torres</u> has been overruled. To the contrary,

the D.C. Circuit recently recognized the continued viability of the <u>Almendarez-Torres</u> doctrine.

<u>See</u> <u>United States v. Brisbane</u>, 367 F.3d 910, 915 n.6 (D.C. Cir. 2004) (citing <u>United States v.</u>

<u>Webb</u>, 255 F.3d 890, 897-98 (D.C. Cir. 2001)). The <u>Brisbane</u> defendant argued that his

conviction was constitutionally unsound because, under <u>Apprendi</u>, the prosecution was required to

allege the facts of his prior convictions in the indictment and to prove those facts to the jury

beyond a reasonable doubt. That argument -- essentially the one that petitioner advances here --

was flatly rejected by the D.C. Circuit. <u>See</u> <u>Brisbane</u>, 367 F.3d at 915 n.6.

 <u>Booker</u> did not change the state of the law in this regard, because that opinion explicitly

carves out prior convictions from its holding. <u>Carr</u>, 2006 WL 401818 at *4; <u>see</u> <u>Booker</u>, 543 U.S.

at 244 (stating that "[a]ny fact (<u>other than a prior conviction</u>) which is necessary to support a

sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury

verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt")

(emphasis added); <u>accord</u> <u>United States v. Shelton</u>, 400 F.3d 1325, 1329 (11th Cir. 2005) (noting

that <u>Booker</u> "left undisturbed" the holding of <u>Almendarez-Torres</u> in this regard). To be sure,

reasonable minds may disagree regarding whether <u>Booker</u>'s segregation of prior convictions as

distinct from all other facts is correct in light of <u>Apprendi</u>, and may also debate whether <u>Apprendi</u> cast <u>Almendarez-Torres</u> into doubt.  <u>See</u> <u>Carr</u>, 2006 WL 401818 at *4 n.9.  But the law must be applied as it exists, not as petitioner surmises it should be.  At this time, petitioner's arguments are foreclosed by controlling precedent, and this Court must apply the rule of <u>Almendarez-Torres</u> "unless and until a higher authority disavows it."  <u>Id</u>.

### B.  Petitioner's Guilty Plea Was Not Rendered Involuntary Due to Court Error

To be considered voluntary, a guilty plea must be made without coercion and "with full understanding of the consequences."  <u>Kercheval v. United States</u>, 274 U.S. 220, 223 (1927); <u>United States v. Russell</u>, 686 F.2d 35, 38 (D.C. Cir. 1982) (stating that "[a] plea cannot be considered voluntary if . . . the defendant is not 'fully aware of the direct consequences' of the plea") (quoting <u>Brady v. United States</u>, 397 U.S. 742, 755 (1970)).  Petitioner claims that his guilty plea was rendered involuntary because the Court failed specifically to draw attention (during the plea hearing) to the fact that petitioner was, or might be, considered a career offender. Petitioner bases his argument on Fed. R. Crim. Proc. 11, which sets forth the requirements for guilty plea proceedings.  Because petitioner is attacking the adequacy of his plea proceeding for the first time in a § 2255 motion, he must meet a higher standard than that which applies on direct appeal. <u>See</u> <u>United States v. Dewalt</u>, 92 F.3d 1209, 1212-13 (D.C. Cir. 1996) (drawing a distinction between the harmless error standard on direct appeal and the fundamental defect standard on collateral review under § 2255).  Specifically, petitioner must show that the plea proceeding "was tainted either by 'a fundamental defect which inherently results in a complete miscarriage of justice' or by 'an omission inconsistent with the rudimentary demands of fair procedure.'" <u>See</u> <u>id</u>. at 1213-14 (quoting <u>Hill v. United States</u>, 368 U.S. 424, 428 (1962)); <u>see</u> <u>also</u>

United States v. Vonn, 535 U.S. 55, 64 (2002).

Plaintiff cannot meet this high standard.  To begin with, nothing in Rule 11 requires the Court to inform the defendant that he has been (or might be) labeled a career offender.  See Fed. R. Crim. Proc. 11.  Rule 11 only requires that the Court ensure that the defendant fully understands the nature of the charges,[2] the facts that he is acknowledging, the rights that he is surrendering, the court's obligation to comply with the FSG, and the consequences of his guilty plea.  See Fed. R. Crim. Proc. 11(b)(1).  The requirement that the Court inform the defendant of the consequences of his guilty plea means only that

> with respect to sentencing . . . the defendant must know the maximum prison term and the fine for the offense charged.  As long as [the defendant] understood the length of the time he might possibly receive, he was fully aware of his plea's consequences.

United States v. Pearson, 910 F.2d 221, 223 (5th Cir. 1990) (quoting United States v. Rivera, 898 F.2d 442, 447 (5th Cir. 1990)).

The Court is confident that petitioner understood the consequences of his guilty plea.  At the plea hearing, the Court engaged petitioner in a lengthy colloquy, during which he was informed that he faced 20 years in prison, and that his sentence would be determined according to applicable provisions of the FSG.  The Court further noted that it retained ultimate discretion to render a sentence harsher than the one anticipated by petitioner, his attorney, or the government.

---

[2]This requires only that the Court describe to the defendant the specific offenses to which he is pleading guilty with enough specificity to enable the defendant to understand what he is claiming to have done.  At petitioner's plea hearing, the Court identified the specific offense and the government summarized the elements of that offense.  The Court questioned defendant to ensure that he understood the offense, and the government read aloud the factual proffer for the plea agreement.  Petitioner was told to pay close attention and to immediately object if he did not agree with the facts in the proffer.  The Court then questioned petitioner again to ensure that he fully understood how the facts in the proffer incriminated him with respect to the offense.

By petitioner's own admission, no promises were made to him regarding the leniency of his sentence or the reliability of any estimates thereof.  <u>See</u> Fed. R. Crim. Proc. 11(b)(2).  The exact warnings given by the Court at the plea colloquy have routinely been deemed sufficient by the D.C. Circuit.  <u>See</u>, <u>e.g.</u>, <u>United States v. Hanson</u>, 339 F.3d 983, 990 (D.C. Cir. 2003); <u>United States v. Horne</u>, 987 F.2d 833, 834, 837-38 (D.C. Cir. 1993).  Hence, the Court in no way departed from the requirements of Rule 11, and did not commit any error.  <u>See</u> <u>Pearson</u>, 910 F.2d at 223 (holding that the court's failure to advise defendant that he was designated a career offender under the FSG did not violate Rule 11).

Even assuming for the moment that the Court's failure to use the words "career offender" at the plea hearing constituted technical error under Rule 11, it would not be a fundamental defect. Petitioner's plea agreement included a paragraph that explained why petitioner was considered a career criminal and advised him of the specific offense level that would be assigned as a result -- a minimum of 32.  <u>See</u> Plea Agrmt. at ¶ 10.  The plea agreement also clearly noted that sentencing is always a matter that rests solely in the Court's discretion and is outside the realm of the government's control.  <u>See</u> <u>id</u>. at ¶ 7.  During his plea colloquy, petitioner unequivocally assured the Court that he was familiar with the terms of the plea agreement, that he understood those terms, and that he was voluntarily pleading guilty of his own free will.  "'[T]he representations of the defendant [at a plea hearing] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding' and the defendant's 'declarations in open court carry a strong presumption of verity.'" <u>United States v. Farley</u>, 7 F.3d 158, 163-64 (D.C. Cir. 1995) (quoting <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977)).  By signing the plea agreement, petitioner represented that he was aware of the agreement's

provisions, understood those provisions, and understood the consequences of his voluntary decision to plead guilty.[3]  See Plea Agrmt. at 5.  Because petitioner was already aware that he had been designated a career offender and that he would be sentenced according to a base offense level of 32, and yet was willing to plead guilty despite the Court's reiteration that he could ultimately face a harsher sentence than the one he expected, any alleged error does not constitute a "fundamental defect which inherently results in a complete miscarriage of justice."  Dewalt, 92 F.2d at 1213.

The language of the plea agreement is not, as petitioner asserts, rendered ambiguous by the government's promise not to seek an upward departure or an increase in the base offense level. See Plea Agrmt. at ¶ 3.  According to the plain terms of the agreement, petitioner's base offense level was at least 32 based upon his status as a career offender.  Id. at ¶ 10.  That is the base offense level used by the Court in calculating petitioner's sentence.  Petitioner was never promised that he would not be labeled a career offender, or that he would be assigned a base offense level of 18.  See Plea Agrmt. at 4 ¶ 15, 5 (representing that no other promises outside those contained in the four corners of the plea agreement were made to petitioner).  By its plain terms, the agreement belies petitioner's assertions to the contrary (as do petitioner's own statements during his plea colloquy).  Moreover, petitioner never objected to the career offender designation at the sentencing proceeding.  During his sentencing, the Court clearly and thoroughly explained the provision and its effect.  Petitioner's counsel spoke at length about what she considered to be the inequity of the career offender provision as applied to petitioner, and requested that the Court sentence petitioner

---

[3]Despite petitioner's recent assertions to the contrary, he represented to the Court during his plea colloquy that he had read the plea agreement and "can read and write very well."

at the lowest possible end of the guideline range (which the Court did).  Hence, any alleged

"misunderstanding [of petitioner's] should have evaporated," see Farley, 72 F.3d at 166, and

petitioner could have -- and should have -- sought to express his unwillingness to continue.

"'The plea of guilty is a solemn act not to be disregarded because of belated misgivings

about [its] wisdom.'" United States v. Gomez, 326 F.3d 971, 974 (8th Cir. 2003) (quoting United

States v. Fitzhugh, 78 F.3d 1326, 1328 (8th Cir. 1996)).  The record simply provides no basis upon

which to conclude that petitioner would have chosen to proceed to trial if only the Court had said

"you are labeled a career offender."  This conclusion is supported by the facts known to petitioner

at the time of his plea, as well as the unlikelihood that petitioner would have succeeded at trial

(discussed infra), see Horne, 987 F.2d at 836; United States v. Peyton, 913 F. Supp. 1, 4 (D.D.C.

1995), and the fact that in exchange for pleading guilty, the government agreed not to pursue the

heroin charges on which petitioner had been indicted.  Rule 11 imposes no requirement that the

Court inform a defendant that he has been labeled a career offender if he has clearly been advised

that pleading guilty will subject him to a harsher sentence than the one he later received.  See

United States v. Watley, 987 F.2d 841, 846 (D.C. Cir. 1993) (stating that Rule 11 "does not

mandate . . . that the defendant be told what guidelines will apply or the range those guidelines

will indicate"); Horne, 987 F.2d at 837-38.

### C.  Ms. Hashimoto Did Not Fail to Provide Petitioner With Effective Assistance of Counsel

The Court is also not convinced that petitioner was the victim of ineffective assistance of

counsel.  To succeed upon a claim of ineffective assistance of counsel, petitioner must establish

both that counsel's performance was objectively deficient, causing her not to function "as the

'counsel' guaranteed by the Sixth Amendment," Strickland v. Washington, 466 U.S. 668, 687

(1984), and that there is a reasonable probability that, but for the alleged unprofessional errors, he would have chosen to proceed to trial, Hill v. Lockhart, 474 U.S. 52, 58 (1985).  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  United States v. Loughery, 908 F.2d 1014, 1018 (D.C. Cir. 1990) (quoting Strickland, 466 U.S. at 694).  Petitioner advances several grounds for his ineffective assistance of counsel claim, which the Court will address in turn.

To begin with, petitioner makes general allegations that Ms. Hashimoto failed to inform him fully of the sentencing risks he faced and led him to believe that he would not be sentenced pursuant to the career offender provision.  See Pet'r Mot. Amend. at 3, 6.  But petitioner's own statements during the plea colloquy refute those assertions.  He told the Court that no promises were made to him regarding the sentence that he would receive, and further represented that he had not been led to believe that the Court would impose a lighter sentence if he chose to plead guilty. Petitioner also stated that he was satisfied with Ms. Hashimoto's services, had conferred with her thoroughly regarding the plea agreement, and fully understood the terms of the plea agreement (which included his stipulation as to career offender status and a base offense level of 32).   See United States v. Taylor, 139 F.3d 924, 933 (D.C. Cir. 1998) (stating that the "representations of the defendant at the plea hearing as to the adequacy of counsel . . . may 'constitute a formidable barrier' to his later refutations") (citing Blackledge, 461 U.S. at 74).  In several ways, the Court informed petitioner that despite his or Ms. Hashimoto's estimates of the sentence that likely would be imposed, the Court could impose a harsher sentence.  Petitioner twice asserted his understanding that he faced up to 20 years in prison -- once at the plea colloquy, and once when he signed the plea agreement.  It is clear, then, that petitioner entered his plea fully aware of the

possibility that he could be sentenced to 151 months or more in prison, and with knowledge of the inherent uncertainties and risks.  See Gomez, 326 F.3d at 974, 975.  "The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision."  Brady, 397 U.S. at 757.

Even assuming that counsel failed to advise petitioner of the career offender provision's effect (something the Court does not view as likely in light of the thorough and zealous advocacy exhibited by Ms. Hashimoto on this point at the sentencing hearing and in written filings), the plea colloquy -- and thereafter the sentencing proceeding -- was sufficient to cure that alleged error. See Hanson, 339 F.3d at 990-91; see also Brown v. United States, 45 Fed. Appx. 92, 95 (3d Cir. 2002) (unpublished disposition).  Thus, petitioner cannot show that he was prejudiced: his acknowledgment that a more severe sentence was possible makes it highly unlikely that he would have chosen to pursue a trial if only he had known the name of the provision under which he might be sentenced.  See United States v. Macon, 91 Fed. Appx. 239, 243-44 (3d Cir. 2004) (unpublished disposition); cf. United States v. McCoy, 215 F.3d 102 (D.C. Cir. 2000) (holding that counsel's miscalculation, the prosecutor's reinforcement of that miscalculation, the court's failure to inform defendant of the maximum statutory penalty, and defendant's pre-sentencing objection to his career criminal designation rendered the guilty plea involuntary).

Petitioner next asserts  that counsel repeatedly urged him to plead guilty due to the "overwhelmingly strong" nature of the government's case, and that she "never even attempted to

discuss a foreseeable defense" with him.  Pet'r Mot. Amend. at 5.[4]  The Court cannot say that

counsel acted deficiently in this regard.  Indeed, petitioner was apprehended with several bags of

individually-packaged narcotics positioned beneath his thighs.  See Factual Proffer at ¶ 3.  A

"reliable source" informant had alerted the officers to an ongoing narcotics transaction, provided a

description of petitioner's vehicle, given detailed information about the location of the transaction

and the position of the vehicle, and described petitioner and his co-defendant with sufficient

particularity.  See id.  When the officers approached the vehicle, they were able to corroborate --

first-hand -- the reliability of the tip.  See id.  The informant had interacted with these officers at

least fifty previous times and had proven trustworthy; indeed, the informant had been used by the

police department many more times than that.  The Court determined that there were no Fourth

Amendment violations, thereby declining to suppress the evidence seized from petitioner's vehicle.

Hence, the case against petitioner was indeed a strong one.  It was in petitioner's best interests,

then, to accept the guilty plea, and it was certainly a competent recommendation for counsel to

urge him to do so.  See Hanson, 339 F.3d at 991-92; Horne, 987 F.2d at 836.  As a result of his

guilty plea, the government dropped the heroin charge against petitioner.  It is not the province of

---

[4]Petitioner also points to the fact that his co-defendant, Michael Ott, was allowed to plead guilty to a more lenient charge that was not included in his indictment.  Pet'r Mot. Amend. at 4. However, Mr. Ott was not similarly situated to petitioner, and hence, it would be misleading to draw parallels between Mr. Ott's plea agreement and the one that petitioner claims he should have received.  Ms. Hashimoto did not represent Mr. Ott, whose criminal history differs substantially from that of defendant, and the government's case against Mr. Ott was arguably not as strong as the that against petitioner.  Any argument that Ms. Hashimoto's performance was deficient because petitioner received a less favorable plea deal than Mr. Ott, then, is logically flawed.  "The constitutional requirement of effective assistance of counsel is intended . . . to guarantee a fair disposition of a defendant's case, not to ensure that he or she is able to drive the hardest possible plea bargain with the government."  Peyton, 913 F. Supp. at 4 (quoting Fields v. Atty. Gen. of Md., 956 F.2d 1290, 1298 (4th Cir. 1992)).

the Court to second guess "[counsel's] reasonable strategic or tactical judgments," particularly when the benefit of hindsight supports the conclusion that such judgments furthered petitioner's best interests.  Loughery, 908 F.2d at 1019.  Hence, the Court cannot conclude that counsel's persistence in procuring petitioner's guilty plea either prejudiced defendant or fell below the objective standard of reasonableness expected of competent counsel.

Petitioner also alleges that counsel violated ABA Defense Function Standard 4-3.8, which details a lawyer's duty to keep the client informed, because she allegedly did not consult with him regarding the "absolute existence of the reliable source [informant]" and whether he had a Fourth Amendment claim "if it could be established that the narcotics [o]fficers in fact fabricated the [source's] phone call."  Pet'r Mot. Amend. at 10.  Assuming that petitioner's contentions are true, he still cannot show any prejudice.  Even if counsel did not explain the situation to petitioner, she argued it zealously before the Court.  She diligently represented his interests by challenging the reliability of the government's informant through two paper filings and one oral hearing.  Her arguments were well-presented, extensively researched, and suitably aggressive.  The Court considered counsel's arguments and ultimately determined that, based upon the circumstances of the informant's tip and petitioner's arrest, there were sufficient indicia of reliability.  Hence, the Court concluded that the evidence recovered from the ensuing search and seizure would not be suppressed.  No amount of discussion between counsel and petitioner with respect to these issues would have caused the Court to reach a different conclusion, nor would it have changed the state of the law regarding reliable source informants or the Fourth Amendment.  Petitioner does not identify anything that counsel could have told him with respect to these issues that would have caused him to proceed to trial rather than enter a guilty plea, particularly once the motion to

suppress was denied.  Hence, any alleged departure by counsel from the quoted ABA Defense

Function guidelines was harmless.

      Petitioner's next avenue of attack is to claim generally that counsel failed to investigate and

discuss discovery materials with him, and that she "conducted no meaningful investigation above

the normal filing of a couple [sic] preliminary motions."   In order to establish a denial of effective

counsel based upon a failure to investigate, the petitioner "'has the burden of providing the Court

with sufficiently precise information [in the form of] . . . a 'comprehensive showing as to what the

investigation would have produced.'"  See Hardamon v. United States, 319 F.3d 943, 951 (7th Cir.

2003) (quoting United States ex. rel. Simmons v. Gramley, 915 F.2d 1128, 1133 (7th Cir. 1990)).

Petitioner has failed to carry this burden because he has not specified what the possible effect of

further investigation would have been -- i.e., what evidence or result would have been yielded had

further investigation occurred -- much less articulated how the lack of such investigation

prejudiced him.  The "couple [sic] preliminary motions" that petitioner so flippantly disregards

(presumably the motion to suppress, further supplement in support of the motion to suppress, and

the memoranda in opposition to the government's motion to introduce evidence of petitioner's

prior criminal convictions pursuant to Fed. R. Evid. 609) presented viable strategies for

challenging the government's case, and illustrate that counsel was not deficient with respect to

research and investigation.  Petitioner has done nothing more than parrot language from federal

case law, without supplying any nexus between legal principles and the facts of his case.

      Finally, petitioner argues that counsel "failed to investigate government witnesses" or

prepare a defense regarding the reliable source issue.  Here again, petitioner's arguments are not

persuasive.  As the Court has already indicated, counsel vehemently opposed the reliability of the

informant and sought to suppress all evidence that was based upon the informant's tip.  At the

suppression hearing, counsel questioned witnesses regarding their knowledge of how the source

received its information, the reputation of the source, and previous interactions with the source.

Counsel then filed a supplemental memorandum in further support of her arguments based upon

additional legal research as well as what she learned at the suppression hearing.  The Court simply

cannot conclude that she failed to undertake due diligence in investigating ways to mitigate or

eliminate the impact of the confidential source on petitioner's case.  Petitioner asserts that counsel

should have interviewed the source and investigated whether the source had a criminal record, but

such undertakings would have been a waste of time, because the source's character is only relevant

with respect to the credibility of the tip provided (which the Court had already determined).  The

Court is confident that counsel pursued all relevant and appropriate investigation regarding the

confidential source. [5]

## **CONCLUSION**

Petitioner's § 2255 motion was filed a year and a half after the statutory deadline and is

thus time-barred.  Assuming that the doctrine of equitable tolling is available, it does not apply to

petitioner's motion because he has provided no rationale to support a finding of extraordinary

circumstances.  Moreover, any application of the equitable tolling doctrine would ultimately prove

---

[5]To warrant an evidentiary hearing on the issue of counsel's performance, petitioner must raise "'detailed and specific factual allegations whose resolution requires information outside of the record or the judge's personal knowledge or recollection.'"  See Carr, 2006 WL 401818 at *2 (citing Pollard, 959 F.2d at 1030-31).  He has not done so.  Petitioner's unsubstantiated and belated allegations do not entitle him to a hearing in light of a clear record to the contrary.  See United States v. Tolson, 372 F. Supp. 2d 1, 18-19 (D.D.C. 2005); see also Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 n.12 (3d Cir. 1991).  There is simply no indication that Ms. Hashimoto's legal assistance fell below the objectively reasonable threshold and, quite the contrary, she appears to have been a zealous and thorough advocate.

futile, because petitioner's various legal arguments are without merit.  Accordingly, the motion is

denied.  A separate order has been issued on this date.

                                          /s/    John D. Bates
                                          JOHN D. BATES
                                     United States District Judge

Dated:    March 24, 2006

*Copies to:*

Willie R. Fears, Jr.
#10492-007
FCI
P.O. Box 1000
Cumberland, Maryland 21501-1000
        *Petitioner Pro Se*